Good morning, your honors. May it please the court, Kenneth M. Stern, IV Appellant. I've got a telephone line at home that has a lot of noise on it, so the other day I picked up the phone and dialed 6-1-1 to call the repair service to see if I could fix it. Now if I was being a little careless, I could have very accidentally dialed 9-1-1. And this whole transaction between the government, police officers, and my client all evolved around a 9-1-1 call. The police officer gets to my client's home, and my client gives a very reasonable explanation, well, I didn't call 9-1-1, I've been having problems with my phone. So compare that to what he did with... And then he gave consent. Well, I... So, I mean, I take it from your example that you have no quarrel with the police showing up in response to the call initially, because they don't yet know that it might be a mistake. Well... So then he gave consent. What do you make of that? When they get there, see, the government tries to characterize this as an emergency situation, and when it really wasn't. And I think the officer's conduct, consistent from the very time he got the call through the entire proceeding, shows he was on a fishing expedition. He didn't really believe that there was an emergency. You know, that doesn't seem right to me, because I think the procedure, when a 9-1-1 call goes in, is that if there's a 9-1-1 call and a hang-up, but it's from a landline so they can trace it to an address, it's routine that American jurisdictions and their police respond. Well... And if they get out to the house, and a person comes to the door and says, oh, it was a mistake, well, how do they know there's not a battered person in the back room who dialed 9-1-1, was forced to hang up, and the batterer is now at the front door saying, oh, don't worry about it, officer, I dialed it by mistake. I don't think the officer in that circumstance is doing his or her job by just walking away. I'll say thanks for clearing it up. Well, that's an interesting question, and a very obvious one, Your Honor, and a very reasonable one. But I don't think the officer's conduct was consistent with that. What I would have liked to have seen at the trial would have been some expert testimony as how often do these hang-up calls occur, and when they do occur, how often does it turn out there really is an emergency. Well, there was no testimony of that, but the officer did testify something which gave the inference that there was no real belief that there was somebody in need of assistance, because he testified, well, this is a low-priority call. That's why it took us 45 minutes to get out here. So I believe that shows that the consent was obtained really as a result of subterfuge. But doesn't aren't you precluded by the factual findings of the district court on that? I mean, that was contested. The district court evidently believed the officer as to why the matter proceeded the way it did. No, Your Honor, because while the court did find there was consent, the court never issued whether or not the consent was based upon a subterfuge, whether the officer really had any belief that there was an emergency. But it found that the consent was valid, so how do we get behind that? I think whether the consent was valid is really a legal issue. Whether there was a factual consent, I think, is the factual issue. But whether or not that consent was legally valid and legally obtained, I think, is not – this Court is not bound by that. And if you look at the officer's conduct all along the way, it shows he had no real belief that somebody was in need of assistance. A fairly reasonable explanation is given for the reason for that hang-up call. Then what happens when he gets inside? Well, okay, he sees a pipe, which indicates maybe my client is smoking some sort of drugs. So on the one hand, you've got a person who maybe does a little bit of drugs. On the other hand, is there somebody here who's in dire need of emergency assistance? Those are not mutually exclusive, are they? No, no, they're not, Your Honor. But the question is, especially since it's a low – when you combine this with the low priority of the call and the delay in getting out there, 45 minutes, if you really believe somebody's in need of assistance, what do you do first? You go inquire about a little pipe, or do you go look for – to see if there's somebody in need of assistance? If you really think there's somebody in need of assistance, go, okay, this guy's got paraphernalia. I'm going to go see if there's somebody in need of assistance. He doesn't do that. He concerns himself rather with the little pipe. And then what happens after that, after this whole thing about finding the marijuana? Okay, does he then go look to see if there's somebody in need of assistance? No. He could have secured my client of the appellant. He could have put him in the back of the police car and then gone search the house to see if there's somebody in need of assistance. But does he do that? No. He calls back up to wait for other police officers. If he really believes somebody is in need of assistance, there could be somebody, if that's true, lying, bleeding to death, having some sort of injury which needs immediate attention. But he doesn't do that. He doesn't act consistently at all with any belief that there's a need for, to find somebody who may be in need of assistance in medical treatment. I think his, from the outset, his acts are wholly consistent with somebody who just wants to go on a fishing expedition. And why is a fishing, why would, if you're right, that what he's sort of from the get Why does that invalidate the consent? Assuming that there has been, as a factual matter, a consent, why does the officer's motivation invalidate? Because I believe the consent has to be geared towards that which the officer actually wants to do. If... Well, what about what the officer says he wants to do? Well... I consent that you do X. What if the officer, well, that's, that, you know, what he wants to do is within the scope of X. Well, but I think if it's a subterfuge, and it's for a different purpose, if my client's giving consent to go look for somebody in need of aid, and that's not what the officer's real purpose is, the officer's purpose is, well, I'm here, maybe I don't look like the way this guy looks, maybe, you know, I figure people... What's the legal authority for that, that the officer's subjective reasons for obtaining a consent invalidate the consent? There's plenty of laws to improper means for obtaining a consent, abortion and so forth. But where's the authority that if the officer's seeking a consent is pretextual? Well, I think... Where is that unconstitutional? I think it's in my reply brief, Your Honor, where I cite to the court the fact that the consent has to be for the purpose stated by the officer. It is. I want to look for people in the house. But in other words, I'm just thinking of the racial profiling cases where there are stops made for pretextual purposes, and the Supreme Court has ruled that as long as there is an independently valid basis for the stop, you don't invalidate the stop. So you may be stopped because you're of a certain race or something like that, but if your license plate light actually is out, it's still a valid stop. How is that any different in the case of a consent? Well, because here, Your Honor, I think this case is the same as the hypothetical you just gave, because here, while the officer states that he wants to search for somebody in need of assistance, that's not really his true purpose. But the point, I guess, that Judge Fogel is trying to make is there actually was a 9-1-1 hang-up call. Whatever caused it, it actually happened. And it provided a legitimate basis for the officer to arrive at your client's front door. So he was lawfully where he had a right to be. And at that point, the consent, whatever's in his head, he can obtain valid consent. Because Your Honor, I don't think the 9-1-1 call alone provides sufficient basis to say there's a reasonable belief or objectively reasonable determination that a search has to be made. When you couple it with the other facts, that the officer did not see it as a priority, there was a 45-minute delay, this was a low-priority call, and therefore, when you combine those facts with the other facts, that the officer never acted consistently with somebody who's in need of emergency aid, I think if you look at all of those facts and the officer's conduct from the very beginning, that whole potential reasonable need to look for somebody in need of aid falls away to show that it is merely pretextual. Counsel, you've used up most of your time. Thank you. I'd like to reserve my 40 seconds for a moment. Thank you. Mr. Kim, we'll hear from the government. Thank you, Your Honor. May it please the Court, Steve Kim on behalf of the United States. I'd like to begin with the point, Your Honor, of consent, because I think that is the cleanest basis to affirm the district court's ruling in this case. The issue, I think, first of all, it's important to note that I think the defendant implicitly concedes that consent was given in this case, because the only challenge he raises in his reply brief is as to the scope of the consent. So I think point one is that there is consent here and the officer conducted a search pursuant to that consent, the initial search of the trailer. But as to the scope argument, I don't think that it is persuasive, because regardless of whatever the officer, the fact that the officer's safety concerns developed as a result of the defendant's recalcitrant behavior inside the premises does not alter the fact that he obtained, he requested and obtained consent to search the premises for those who might be in need of assistance. It would make little sense to say that if an officer received consent to search for drugs, and if he happened to find drugs in the course of that search, therefore the scope of the search was somehow exceeded. Now there's no question that the defendant could have limited the scope of the search in terms of geographical space and said, no, you can't go in that particular area, but that was never done in this case. And I think it's questionable whether the defendant could have validly qualified his consent in the way that Mr. Stern is proposing. I think Rubio, this circuit's case, and Rubio is instructive in this regard. It held that the presence of additional officers does not vitiate consent because you can't validly qualify your consent by the number of officers. The reason it gave for that was because there was no additional intrusion into that person's liberty interest by the fact that there were one or more officers involved. Similarly here, Deputy Espinosa is going to look in the exact same places, whether he's looking for somebody in need of assistance, whether he's looking for somebody who might be lying in ambush, or both. He did not exceed the scope of that consent, and therefore, the consent was valid in this case. It was proper and it justified the initial search. And I think that in and of itself is an independent basis. The second point that I would just briefly like to address and take issue with is Mr. Stern's characterization that the officer was somehow behaving inappropriately from the get-go. I think this case demonstrates a quintessential example of an officer carrying out his caretaking function, which is what the emergency doctrine provides for. There's no question that he received a 911 call. Now, it is true that there was one hour lapse from the time that the 911 hang-up call came in to the time that Deputy Espinosa arrived at the doorstep. I don't think that that's significant for a variety of reasons. Number one, there is no temporal requirement in the emergency doctrine. This Court's recent case in Stafford indicated that there was a 30-minute delay in response time to an emergency, which in that case was the report of a dead body with lots of blood and various things inside of an apartment. But they took reasonable measures to call for backup, talk to their supervisors before they made this entry into the location, and we want to encourage those sorts of measured balanced responses regardless of the type of emergency. But I think more to the point, Deputy Espinosa received the dispatch at 5.30. I don't think there's any record in this case that he knew when the 911 call came in. He received the call at 5.30, and then 13 minutes later he arrived at the defendant's residence. I don't think that that's an unreasonable delay. What Deputy Espinosa … Do you have anything in the record as to why it took so long for him to get the call? He could not specifically testify as to that, but there was – he was asked what was the because 911 receives various calls, they have to prioritize their calls. And he said that this would have been a lower priority call because it was a 911 call with not a direct request for assistance. And I think that makes eminent sense, that there's a spectrum of emergencies that 911 will receive. And from a resource … So a resource allocation question really is what you're saying. I think that's certainly one reason that can explain – now, the officer was not saying that that was the reason, but he was hypothesizing in response to a question what could have contributed for the delay. And he said … Well, all he knew was I received the call and 13 minutes later I'm there. That's correct, Your Honor. And I have a couple of other notes on the protective sweep and the final issue in this brief, but it's nothing beyond what's in my brief, so unless the panel has additional questions I'm happy to submit at this point. Thank you. I think we have no further questions. Thank you, Mr. Kim. Thank you. Mr. Sterney, you do have a little rebuttal time. Yes, Your Honor. Your Honor, concerning this – I believe it's the Stafford case – this was a situation where the call was it was a dead body, not somebody in need of assistance, so any kind of delays would be justified. Here any kind of concern would have been somebody in immediate assistance, and the officer – he may not have known exactly when the call came in, but he knew it was low priority, therefore he wasn't responding immediately from the time of the call. And again, what did he do when he got into the house? He didn't go to look for somebody in need of assistance. He went and concerned himself over a little smoking pipe. And then I don't believe that the search was based on officer safety in terms of needing to protect against somebody else who might have been in the house to harm the officer. There was really – there wasn't any evidence that there would be anyway, but I don't believe that was ever the justification. And yes, I mean, the facts do show – my client said, oh, yes, I consent, but the question is that's a fact. I'm not going to contest that. I can't, really. What is the legal effect of that? Is that a content validly obtained, and that's what we contend is not valid. So with that, I would like to submit this to the court. Thank you. Thank you very much. We appreciate the arguments from both of you. The case just argued is submitted.
judges: Graber, W. Fletcher, Fogel